UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNATHAN SETH HARPER,<br><br>    Plaintiff,<br><br> v.<br><br>DAVID ROBINSON, et al.,<br><br>    Defendants. | Case No. 1:21-cv-01364-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED<br><br>(ECF Nos. 19, 26, 29)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS |

Plaintiff Johnathan Seth Harper ("Plaintiff") is a pretrial detainee proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on September 13, 2021. (ECF No. 1.)

On November 17, 2021, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims. (ECF No. 10). The Court gave Plaintiff thirty days to either: "File a First Amended Complaint **that is no longer than twenty-five (25) pages, including exhibits**; or b. Notify the Court in writing that he wants to stand on his complaint." (*Id*. at 18-10.)

While Plaintiff initially chose to stand on his complaint (ECF No. 13), on February 28, 2022, Plaintiff filed a First Amended Complaint ("FAC") (ECF No. 19.) On May 27, 2022, the Court screened the FAC and found that it failed to state any cognizable claims. (ECF No. 26.) The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's

complaint failed to state any cognizable claims, and gave Plaintiff leave to file a Second Amended Complaint. (*Id.*) The Court also gave Plaintiff the option of standing on the FAC, subject to the Court issuing findings and recommendations to a district judge recommending dismissal of the action consistent with the screening order. (*Id.*)

On July 5, 2022, Plaintiff filed a document titled "Objection to May 27, 2022 Screening Order" which set forth Plaintiff's objections to the findings in the screening order. (ECF No. 29.) The Court construes this filing as a notice that Plaintiff wants to stand on his FAC.

For the reasons set forth below, the Court recommends that this action be dismissed for failure to state a claim.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.       SCREENING REQUIREMENT

The Court is required to screen complaints brought by inmates seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the inmate has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

(quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.    SUMMARY OF THE FAC

At times, Plaintiff's FAC is difficult to understand.  What follows is the Court's best understanding of Plaintiff's factual allegations.

Plaintiff brings three claims.

1.    <u>Plaintiff's First Claim</u>

Plaintiff's first claim is for violation of his Sixth Amendment right to prepare and present a meaningful defense in his criminal cases.  Plaintiff alleges that defendant Robinson (the Sheriff) attended a closed meeting with defendant Campbell (the "CAO"), defendant Board of Supervisors, defendant Putnam (the Assistant Sheriff), and defendant Thomas (a Captain).  Topics included financial issues and budget overruns of the Sheriff's Office – Detention's Division.  Defendant Campbell "ventured" to analyze and develop policy alternatives after declaring a need for an audit.  She also offered to evaluate and advance financial maneuvers as a stopgap measure for review by defendant Board of Supervisors.

Defendant Robinson attended a second closed meeting with the same defendants and participated in a discussion on an audit conducted by defendant Erb (the Auditor-Controller/Treasurer).  Defendant Campbell discussed the report and recommendations of defendant Erb, including findings that insufficient funds were allotted in support of inmate expenses while excessive funds were allotted to administrative overhead and personnel related matters.  Defendant Campbell advanced discussion on suggestions and recommendations for defendant Board of Supervisors and defendant Robinson on budget items as adopted for the

fiscal year, as well as stopgap measures.  The discussion was based in part on the auditor report and on the Sheriff's Office's writings, including logs, memoranda, excel spreadsheets, dataset records, and addendums.

Defendant Robinson adopted recommendations and suggestions from defendant Campbell and defendant Board of Supervisors, including: a sudden and extreme change to inmate mail policy related to indigent inmate legal mail and confidential mail; a delay and review policy related to *pro se* inmate requests for copies, forms, supplies, and services necessary for court cases; a delay and review policy for incoming and outgoing confidential mail and legal mail; and a policy toward *pro se* inmates that amounted to harassment and abuse of authority and deliberate indifference to litigation activity.

Defendant Robinson e-mailed defendant Putnam a supplemented summary of the findings and recommendations from defendants Erb, Campbell, and Board of Supervisors. Defendant Robinson suggested, with bullet points, actions to be taken and further instructions to disregard the Sheriff's Office's policies and procedures manual and legal-related concerns before the next yearly budget.

Defendant Robinson also authorized defendant Putnam to effectuate any other changes as he sees fit and to hold a meeting with defendants Thomas and Tolbert.

Defendant Robinson tacitly ordered defendant Putnam to shut down *pro se* inmate litigation activity with group retaliation tactics (in which a group of inmates is manipulated by jail deputies to retaliate against an inmate), fake disciplinary reports, theft of legal work, and by denying basic needs.

Defendant Robinson ensured that an internal narrative was passed down the chain of command and among personnel that "logistical burdens" and "logistical impossibilities" will create an unavoidable deprivation of inmates' rights, and to ignore them as "unavoidable."

Defendant Robinson has maintained a policy of retaliation and punishment against inmates who assert and exercise their rights to file grievances and engage in litigation. Defendant Robinson was made aware by defendant Putnam of jail personnel tailoring retaliatory and punitive actions to individual inmates because inmates in general grew aware of

the policy and technique of group retaliation by jail personnel and it failed to work as often.

Defendant Robinson has not followed state-mandated regulations for clothing and bedding exchange, and he refuses to do so.

Defendant Robinson refuses to conduct legitimate investigations into personnel misconduct, and therefore he refuses to discipline or fire deputies, no matter how flagrant and abusive the misconduct is. Instead, defendant Robinson covers for them.

Defendant Robinson refuses to maintain a legitimate administrative grievance procedure. Grievances are almost certain to be a waste of time and effort, and they operate as a sham. This has been the case for as long as defendant Robinson has been Sheriff.

Defendant Robinson is aware of a culture of changing records, logs, and other data within the jail as may be deemed necessary by deputies, but he takes no action to remedy this blatant misconduct.

Defendant Robinson is an architect of a policy in which incoming and outgoing confidential and legal mail is opened and sent on its way, fixed as necessary. Since July of last year, such mail has been held in internal inspection baskets for days or weeks on end for "review." This holding of mail is sometimes calculated to ensure missed court deadlines for responsive papers or failed proceedings.

Defendant Robinson has a policy for evading service of process.

Defendant Robinson has a policy of refusing to provide inmates (whether indigent or not) with a way to obtain sealable manilla envelopes, with knowledge that the County-contracted commissary company for the Jail refuses to sell sealable manilla envelopes.

Plaintiff has been injured by the policies and actions, or inactions, of defendant Robinson. Plaintiff is defending two criminal cases as a *pro se* defendant, and he is the plaintiff or petitioner in four active civil cases. All cases have been severely delayed and damaged.

Defendant Campbell attends meetings and takes actions, as described above.

Defendant Campbell posited at the second meeting that defendant Board of Supervisors may have appropriated insufficient funds to the Sheriff's Office to reasonably meet the

obligations of defendant Board of Supervisors to provide sufficient funding for food, bedding, clothing, medical expenses, and other items necessary for the support of inmates held in custody, despite the Sheriff's excessive allocation of funds to administrative overhead and personnel related matters.

Defendant Campbell suggested and recommended that defendant Robinson adopt certain policies, including: a sudden and extreme change to inmate mail policy related to indigent inmate legal mail and confidential mail; a delay and review policy related to *pro se* inmate requests for copies, forms, supplies, and services necessary for court cases; a delay and review policy for incoming and outgoing confidential mail and legal mail; and a policy toward *pro se* inmates that amounts to harassment and abuse of authority and deliberate indifference to litigation activity.

Defendant Campbell already possessed knowledge of the Sheriff's policies of group retaliation, theft of legal paper from inmates, and denial of basic needs such as showers and outdoor exercise time.

Defendant Campbell failed to remedy or report defendant Robinson's extra-legal and arbitrary policies.

Plaintiff has been injured by the actions and inactions of defendant Campbell because she suggested and recommended that the policies listed above be adopted, and she failed to report or attempt to remedy clear abuses by defendant Robinson.  Rather than render suggestions and recommendations of a proper nature, she worsened the deprivations experienced by inmates and created a standstill to Plaintiff's criminal defense.

Defendant Board of Supervisors chose to ignore evidence of appropriation of insufficient funds for the Sheriff and evidence of excessive allocation of funds by the Sheriff to personnel and administrative overhead issues.  It also adopted the suggestions by defendant Campbell for cutting expenses that supported inmates.

Defendant Board of Supervisors "suggested" that defendant Robinson create such a state of affairs as to sharply draw down on costs in support of inmates by way of practical suspension of *pro se* inmate legal activity as detailed above.

6

Defendant Board of Supervisors tacitly acknowledged and has understanding of a long history of a policy of retaliation by defendant Robinson against inmates exercising their rights to file grievances and lawsuits, yet it has not attempted to address this.  Instead, it has chosen to reap the financial rewards for the County of costs saved from blocked litigation and maintenance of a false image to the public.

Defendant Board of Supervisors failed to appropriate sufficient funding for the maintenance of inmates, failed to remedy the problem, and exacerbated the problem with irrational cost-containment modules.

Defendant Board of Supervisors refuses to reassess its contractual terms, rights, and duty to compel performance of contracts, and to ensure that terms of contracts are adequately monitored as it relates to the County contract held with Canteen of Fresno, the company that supplies canteen and commissary items to inmates in Kings County Jail.

Defendant Board of Supervisors' refusal to take action regarding the Canteen's refusal to provide sealable manilla envelopes for inmates and to instead sell defective ones into the inmate population, and Defendant Board of Supervisors' similar refusal to take action regarding defendant Robinson's refusal to remedy the problem, constitutes a clear constitutional problem.  It is obvious that inmates need the ability to seal their envelopes containing confidential mail, especially litigation against defendant Robinson and subordinate personnel.

Despite evidence demonstrating significant misconduct by personnel in the Sheriff's Office on a perpetual and well-known basis, as well as Defendant Board of Supervisors' own acknowledgment and endorsement of it, Defendant Board of Supervisors failed to take remedial actions.

Defendant Board of Supervisors is in a position to hire or strongly influence the hiring of Sheriff's Office personnel, and it is in a similar position to fire or strongly influence the firing of Sheriff's Office personnel.  It could fire the training sergeant, defendant Cortez, who could be replaced with another officer of proven or adequate record.

///

7

Defendant Board of Supervisors holds open meetings with the topic of the Sheriff's Office's detention decisions, but also holds closed meetings where there is more candor and "back seat" supervision of the Sheriff's Office by tacitly or expressly acknowledged directions regarding fiscal problems.

Defendant Board of Supervisors has received prior notices of temporary restraining order applications and preliminary injunction motions filed by Plaintiff and others regarding its involvement in the Sheriff's Office's fiscal matters, and its failure and refusal to perform its duties and obligations.

Plaintiff has been injured by the refusal of defendant Board of Supervisors to perform its duties and obligations, and by its directions and suggestive recommendations to defendant Robinson advocating or requesting clear misconduct to advance fiscal considerations.

Defendant Putnam substantially interfered with Plaintiff's defense of his criminal cases by rigging them by causing protracted court hearings and court dates, due in large part to the authorization given by defendant Putnam to carry forward a plan orchestrated in advance by his subordinate officers (defendants Thomas, Tolbert, and Chism) to set Plaintiff up to serve as an example, to justify an abrupt and sharp deviation of *pro se* inmate policies that had already been drafted and decided, and to effectuate punishment and threaten intimidation against Plaintiff.

Defendant Putnam was informed by defendant Thomas of the pretexts to be imposed and implemented for the record and on to Plaintiff as a reason for the institution of severe changes to inmate policies.  These pretextual justifications were deemed sufficient enough to "work."

Defendant Putnam issued directives to defendant Thomas to cause delay for all legal and confidential mail coming in or out of the Jail for *pro se* inmates.  Defendant Putnam also issued a directive to defendant Thomas to cause delay for inmate requests for copies, legal forms, legal materials, and other similar supplies and services, regardless of whether the inmate is indigent or not, and for such requests to be set aside for further analysis by the Facility Lieutenant or County Counsel, or to be outright discarded.

8

Defendant Putnam ordered that Plaintiff's outgoing legal and confidential mail be withheld and put off for County Counsel or Captain review and determination of "necessity."

Defendant Putnam facilitated an internal narrative requested by defendant Robinson to be passed down the chain of command that "logistical burdens" and "logistical impossibilities" justify and explain deprivation of inmate rights and that it is "unavoidable."

Defendant Putnam attended meetings and maintained policies as described above.

Defendant Putnam has maintained a policy that personnel are to be trained on concealment of misconduct witnessed by themselves and others when writing "incident reports" and are to be coached in the coordination of narratives. This includes education on tactics, techniques, and stratagems on handling inmate witnesses and complaints in an escalating manner of coercion and threats.

Defendant Putnam authorizes retaliatory and punitive acts tailored to the inmate and occurrence at issue, and the configuration of multi-faceted strategies to disengage *pro se* inmates or prospective *pro se* inmates from litigation that ends with the continuous harassment of the inmate in question, as has happened to Plaintiff.

Defendant Putnam tacitly advances intensified retaliatory acts against Plaintiff which include multiple attempts at incitement of physical violence against Plaintiff by group retaliation.

Defendant Thomas participated in the orchestration of a plan with defendant Tolbert and defendant Chism to run a script set up in advance to set Plaintiff up to be written-up for rules violations that were intended to serve as the pretextual justification for a new inmate mail policy and to effect punishment against Plaintiff and intimidate him. The rules violations were known and permitted for over a year.

Defendant Thomas ordered mailroom staff to delay all confidential and legal mail to Plaintiff by putting it in a basket for later review, and to delay all incoming or outgoing confidential and legal mail from all *pro se* inmates.

Defendant Thomas ordered defendant Morris to delay for further review all *pro se* inmate requests (including Plaintiff's) for legal supplies and services, including copies, forms,

and printouts.

Defendant Thomas disregarded her job requirement to maintain personnel fit for performing their job duties and obligations, as evidenced by the discarded or effectively discarded personnel complaints and administrative reviews regarding this matter.

Defendant Thomas has done nothing to ensure that the Sheriff's Office's budget for the Jail has been allotted sufficient funds for the support of inmates.  The issue should have been raised to the proper officials or at the meetings held as described above.

Defendant Thomas endorsed bogging Plaintiff down in multiple areas of litigation against the County, at the expense of attention and defense of Plaintiff's criminal cases. Conditions imposed against Plaintiff had to be addressed.

Defendant Thomas prepares or reviews required reports to the Board of State and Community Corrections that are not indicative of actual operations at the Jail.

Defendant Thomas had complicit knowledge with defendant Tolbert that review of legal mail and confidential mail, as described above, were "legitimizations" for holding confidential mail past court deadlines.

Defendant Tolbert conspired with defendants Chism and Thomas to set Plaintiff up as a pretextual justification to implement an extreme departure of normal inmate mail policy and to impose punishment and retaliation under the pretextual banner of rules violations being addressed.  Such rules violations were known to defendants Tolbert, Thomas, and Chism for more than a year.  Since Plaintiff was blamed for the budget insufficiency of the Sheriff's Office in accounting for *pro se* inmate support expenses, Plaintiff was targeted for retaliation and punishment to offload competence and performance deficiencies and to avoid embarrassment to defendant Robinson, defendant Putnam, defendant Thomas, and defendant Tolbert.

Defendant Tolbert participated in the manufacturing of a reason to justify the sudden and extreme change to inmate mail policy and widespread disruption and obstruction of *pro se* legal activities, by claiming that all of a sudden Plaintiff was to blame for the incompetence and the discovery of ill-spent county finances by defendants Robinson, Putnam, Thomas, Tolbert,

Campbell, and Erb.  Vague and irrational reasons were issued for exactly why or how Plaintiff was to blame for the official incompetence and misallocation of County funds by County Sheriff employees.

Defendant Tolbert refused to conduct legitimate investigations into personnel complaints, not only defeating the purpose of the California state statute demanding that a personnel complaint procedure be available to all citizens to make a complaint against an officer, but also unilaterally preempting the state legislature.  This "nullified" severe misconduct and abuse of authority because a legitimate investigation would have verified the complaints of Plaintiff and others.

Defendant Tolbert refused to take steps to acquire or make sealable manilla envelopes available to inmates so they could mail legal documents or other confidential mail for civil cases.

Defendant Tolbert mailed, by interfacility mail, a memorandum personally blaming, goading, harassing, and antagonizing Plaintiff, while implementing a sudden and practical halt to all litigation by *pro se* inmates jail wide.

Defendant Tolbert refused to investigate personnel manipulations of computer data entries and statements to cover the chronology of events that demonstrates clear staff abuses against inmates.

Defendant Tolbert failed to prevent reoccurrences of personnel misconduct.

Defendant Tolbert ensured defendant Long was aware of the situation with Plaintiff and the plotted cell search and decision to ignore future protests by Plaintiff.

Defendant Long had a policy of upholding the most outrageous and demonstrably false or erroneous grievance responses from inferior levels of the grievance process.  She ignored Plaintiff's replies to appellate responses, despite the substance of the replies.  She refused to investigate or fix poor conditions of confinement, abuses by personnel, and easily fixable issues.  The final level of appellate review is by her and expressly constitutes policy of the Jail.

Defendant Long refused to follow state-mandated regulations for bedding and clothing exchanges, despite repeated notices.

Defendant Long repeatedly refused to overturn disciplinary write-ups and retaliations against Plaintiff, which is evidenced by a disparity in treatment.

Defendant Long refused to follow state-mandated regulations for the provision of hot water and of cleaning supplies, leaving Plaintiff and others within his living area with insufficient ability to clean, and with cold water only.

Defendant Collier refused to follow state-mandated bedding and clothing exchange regulations.

Defendant Collier refused to follow state-mandated regulations for the provision of hot water and cleaning supplies, leaving Plaintiff and others within his living area with insufficient ability to clean and with cold water only.

Defendant Collier had a policy of upholding the most outrageous and demonstrably false or erroneous grievance responses from inferior levels of the grievance process, ignoring Plaintiff's replies to appellate responses despite the substance of the replies.  He also refused to investigate or fix poor confinement conditions abuses by personnel, including easily fixable issues.  The final level of review is by him and expressly constitutes the policy of the Jail.

Defendant Collier took over responsibilities as Unit Lieutenant for Unit C (where Plaintiff is housed) from former Unit Lieutenant defendant Long.

Defendant Chism purportedly received a tip from a jailhouse informant that Plaintiff was "wasting" county-provided envelopes and postage by mailing places without need and without a connection to his civil or criminal cases.  The informant also purportedly told defendant Chism that a stockpile was on his top bunk.  This information was relayed by the informant through classification personnel Alcale, Van Ness, and Womuck to defendant Chism.  Defendant Chism then received the information and authorized a raid on Plaintiff's cell for possession of contraband, ordering the above-mentioned staff to confiscate legal papers and work product.

Defendant Chism plotted and prepared for this theft of legal papers and work product by participating in the orchestration of the cell search with defendants Tolbert and Thomas, who helped stage the event in cooperation with the informant and her subordinate staff.

12

Defendant Chism was aware that Plaintiff was to be denied showers and outside cell time, as well as outdoor time and phone use, for multiple weeks in a row for illegitimate write-ups.

Defendant Morris ignored requests for copies of legal papers, forms, supplies, and services for weeks, referring requests that were urgent and important to County Counsel, defendant Thomas, or defendant Tolbert.  At the same time, defendant Morris permitted random unimportant, costly, and time-consuming requests to be processed diligently.  This was done to specifically communicate to Plaintiff that litigation activities prove futile.

Defendant Morris divulged Plaintiff's requests for copies and other legal materials for "review" by defendant Thomas or defendant Tolbert.  Information gleaned from the legal papers was used against Plaintiff to defeat efforts at litigation.

Defendant Snyder withheld Plaintiff's mail, both outgoing and incoming, for "inspection" by defendant Thomas, and information gathered from breached and repacked envelopes were used against Plaintiff's litigation activities.

Defendant Snyder always marks "opened," "taped," and "torn" either individually or in any combination.

Defendant Snyder has opened Plaintiff's confidential mail, scanned the substance of it without Plaintiff present, and determined the issues and purpose to learn how to defeat Plaintiff's litigation, and proceeded to do so.

Defendant Snyder has falsified mail logs to claim outgoing confidential envelopes by Plaintiff were mailed when they actually were not.

Defendant Chavez trains deputies on how to defeat the purpose of the inmate grievance system while simultaneously creating the appearance of helping.

Defendant Chavez trains deputies on tactics and techniques of retaliation and implicit dissuasion from filing grievances and lawsuits, primarily by psychological methods of helplessness.

Defendant Chavez instructs deputies on how to instigate physical assaults on an inmate by utilization of another inmate to act as proxy assailant in place of the deputy, to reduce

13

accountability.

Defendant Chavez trains deputies on how to conceal and suppress abuses and harassment of inmates.

Defendant Chavez chooses to perform illegitimate job functions by way of perversion of the fulfillment of his job duties and obligations.

2.    Plaintiff's Second Claim

Plaintiff's second claim is that he was subjected to pretrial punishment in violation of the Fourteenth Amendment's due process clause.

Plaintiff alleges that defendant Robinson did not notify Plaintiff's judges of his unilateral and non-judicial decision to suddenly strip Plaintiff of all *pro se* rights and privileges, and he did not hold a *Wilson* hearing or any other hearing before doing so.

Defendant Robinson maintains a standing policy of retaliation and punishment by way of group retaliation tactics, fake disciplinary reports, denial of basic needs, and instigation of physical assault by other deputies or inmates.

Defendant Robinson adopted recommendations and suggestions from defendant Campbell and defendant Board of Supervisors, including: a sudden and extreme change to inmate mail policy related to indigent inmate legal mail and confidential mail; a delay and review policy related to *pro se* inmate requests for copies, forms, supplies, and services necessary for court cases; a delay and review policy for incoming and outgoing confidential mail and legal mail; and a policy toward *pro se* inmates that amounts to harassment and abuse of authority and deliberate indifference to litigation activity.

Defendant Robinson refuses to follow state-mandated regulations regarding bedding and clothing exchange, despite repeated notifications.

Defendant Robinson allows for personnel abuses and misconduct to repeat endlessly because of refusals to investigate and discipline his subordinate personnel.

Defendant Robinson refuses to provide a way for any inmate to obtain sealable manilla envelopes for civil cases.

///

14

Defendant Robinson fails to maintain a legitimate administrative grievance process, allowing conditions which amount to punishment to thrive and prosper.

Defendant Putnam denied Plaintiff the ability to conduct and maintain a defense to his criminal charges by authorizing a change to mail policy and other *pro se* rights and privileges for all *pro se* inmates, including denial of the ability to make copies, obtain forms, receive and send confidential or legal mail, and otherwise get anything done as a *pro se* defendant to a criminal case or otherwise.

Defendant Putnam effectuated serious punishment by authorizing defendants Thomas, Tolbert, and Chism to orchestrate a cell raid to set Plaintiff up to serve as an example and to provide a justification for an abrupt and extreme change in mail policy and other policies for *pro se* inmates.  The staging and orchestration of the plan was prepared in advance of the actual cell search, including paperwork drafts of the results.

Despite the cell search not uncovering any contraband having any bearing on *pro se* policies, a stack of manilla envelopes given to Plaintiff by mailroom staff was called "excessive" and swift and severe punishment followed, purportedly triggered by "excessive" envelopes not yet mailed.

Defendant Putnam silenced dissent to the events following the cell search by passing down the chain of command an internal narrative that "logistical" problems caused the deprivation of rights and was "unavoidable."

Defendant Putnam advanced retaliatory acts against Plaintiff, which included multiple attempts to incite physical violence against him.

Defendant Putnam authorized retaliatory and punitive acts tailored to the inmate and occurrences at issue, "including continuous harassment for trying to deflect Asst. Sheriff's authorized multi-faceted strategies to disengage inmates from litigation activity, including Plaintiff."

Defendant Thomas participated in the orchestration of a plan with defendant Tolbert and defendant Chism to run a script set up in advance to set Plaintiff up to be written-up for rules violations that were intended to serve as the pretextual justification for a new inmate mail

15

policy and to effect punishment against Plaintiff and intimidate him.  The rules violations were known and permitted for over a year.

Defendant Thomas ordered mailroom staff to delay all confidential and legal mail to Plaintiff by putting it in a basket for later review, and to delay all incoming or outgoing confidential and legal mail from all *pro se* inmates.

Defendant Thomas ordered defendant Morris to delay for further review all *pro se* inmate requests (including Plaintiff's) for legal supplies and services, including copies, forms, and printouts.

Defendant Thomas endorsed bogging Plaintiff down in multiple areas of litigation against the County, at the expense of attention and defense of Plaintiff's criminal cases. Conditions imposed against Plaintiff had to be addressed.

Defendant Thomas had complicit knowledge with defendant Tolbert that review of legal mail and confidential mail, as described above, were "legitimizations" for holding confidential mail past court deadlines.

Defendant Tolbert conspired with defendants Chism and Thomas to set Plaintiff up as a pretextual justification to implement an extreme departure of normal inmate mail policy and to impose punishment and retaliation under the pretextual banner of rules violations being addressed.  Such rules violations were known to defendants Tolbert, Thomas, and Chism for more than a year.  Since Plaintiff was blamed for the budget insufficiency of the Sheriff's Office in accounting for *pro se* inmate support expenses, Plaintiff was targeted for retaliation and punishment to offload competence and performance deficiencies and to avoid embarrassment to defendant Robinson, defendant Putnam, defendant Thomas, and defendant Tolbert.

Defendant Tolbert participated in the manufacturing of a reason to justify the sudden and extreme change to inmate mail policy and widespread disruption and obstruction of *pro se* legal activities, by claiming that all of a sudden Plaintiff was to blame for the incompetence and the discovery of ill-spent county finances by defendants Robinson, Putnam, Thomas, Tolbert, Campbell, and Erb.  Vague and irrational reasons were issued for exactly why or how Plaintiff

16

was to blame for the official incompetence and misallocation of County funds by County Sheriff employees.

Defendant Tolbert mailed, by interfacility mail, a memorandum personally blaming, goading, harassing, and antagonizing Plaintiff, while implementing a sudden and practical halt to all litigation by *pro se* inmates, jail wide.

Defendant Tolbert ensured defendant Long was aware of the situation with Plaintiff and the plotted cell search and decision to ignore future protests by Plaintiff.

Defendant Long had a policy of upholding the most outrageous and demonstrably false or erroneous grievance responses from inferior levels of the grievance process.  She ignored Plaintiff's replies to appellate responses, despite the substance of the replies.  She refused to investigate or fix poor conditions of confinement, abuses by personnel, and easily fixable issues.  The final level of appellate review is by her and expressly constitutes policy of the Jail.

Defendant Collier is liable for this claim as already alleged.

Defendant Chism engaged in conspiracies with defendants Tolbert and Thomas to set Plaintiff up to take the fall for the reason why *pro se* inmates can no longer obtain envelopes for use in civil cases.  By obtaining this cost-saving measure for the Sheriff's Office, defendant Chism participated in manufacturing a write-up for "excessive" envelopes in cell.

Defendant Chism was aware that Plaintiff would be denied showers and outside time, as well as commissary and phone use.

Defendant Morris participated in the pretrial punishment of Plaintiff by ignoring requests for copies, supplies, and services as related to *pro se* matters unless they were inconsequential.

3.     Plaintiff's Third Claim

Plaintiff's third claim is for retaliation in violation of the First Amendment.

Defendant Putnam rigged Plaintiff's criminal and civil cases by way of causing protracted court hearings and "dates due."  This was caused in large part due to the authorization by defendant Putnam to carry forward a plan orchestrated in advance by his subordinate officers (defendants Thomas, Tolbert, and Chism) to set Plaintiff up to serve as an

17

example and justification for a sharp and abrupt deviation of *pro se* inmate policies that already had been drafted and decided upon in advance.  This was also done to serve as retaliation and punishment, as well as to intimidate Plaintiff.

Defendant Putnam advanced intensifying retaliatory acts against Plaintiff which included multiple attempts of incitement of physical violence by group retaliation.

Defendant Thomas participated in the orchestration of a plan with defendants Tolbert and Chism to set Plaintiff up to be written-up for rules violations intended to serve as a pretextual justification for a new inmate mail policy and to effect retaliation and punishment against Plaintiff, as well as to intimidate him.  Plaintiff's rules violations were known by defendants Thomas, Tolbert, and Chism for over a year, and were permitted.

Since Plaintiff was blamed for *pro se* inmate support expenses, as specifically written by defendant Tolbert in a personal memorandum, Plaintiff was targeted for retaliation and punishment.

Defendant Tolbert offered irrational and vague reasons for why Plaintiff was to blame for the official incompetence and misallocation of County funds by the Sheriff.

Defendant Tolbert personally mailed, by interfacility mail, a memorandum personally blaming Plaintiff and goading, harassing, and otherwise antagonizing Plaintiff while implementing a sudden and severe change to the inmate mail policy facility wide.

Defendant Long repeatedly refused to overturn illegitimate writeups against Plaintiff, and was complicit in targeted harassment, punishment, and retaliation, as evidenced in disparity of treatment.

Defendant Chism helped orchestrate the theft of legal papers and legal work product from Plaintiff's cell.  She also justified implementation of a pre-drafted change to mail policy and *pro se* policies, which greatly restricted and denied privileges and rights of inmates, purportedly due to Plaintiffs "excessive" envelope possession.

Defendant Chism was aware Plaintiff was to be denied showers, outside cell time, outdoor time, commissary, and phone use for multiple weeks in a row for illegitimate write-ups.

Defendant Morris defeated Plaintiff's litigation efforts by divulging Plaintiff's legal work information to defendant Thomas or defendant Tolbert.

Defendant Snyder divulged Plaintiff's mail/received legal papers to defendant Thomas.

### III.   ANALYSIS

1.   <u>Section 1983</u>

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)*); see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely

resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

2.   Federal Rule of Civil Procedure 8(a)

As set forth above, and in the Court's first screening order, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the

20

1    claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although a

2    complaint is not required to include detailed factual allegations, it must set forth "sufficient

3    factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*,

4    556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  It must also contain "sufficient

5    allegations of underlying facts to give fair notice and to enable the opposing party to defend

6    itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Moreover, Plaintiff

7    must demonstrate that each named defendant personally participated in the deprivation of his

8    rights.  *Iqbal*, 556 U.S. at 676-77.

9         A court may dismiss a complaint for failure to comply with Rule 8(a) if it is "verbose,

10   confusing and conclusory."  *Nevijel v. N. Coast Life Ins. Co.,* 651 F.2d 671, 674 (9th Cir.

11   1981); *Brosnahan v. Caliber Home Loans, Inc.*, 765 F. App'x 173, 174 (9th Cir. 2019).

12   Additionally, a court may dismiss a complaint for failure to comply with Rule 8(a) if it is

13   "argumentative, prolix, replete with redundancy, and largely irrelevant."  *McHenry v. Renne*,

14   84 F.3d 1172, 1177 (9th Cir. 1996).

15        Although Plaintiff's FAC is twenty-five pages — substantially shorter than the 160

16   pages of Plaintiff's original complaint — it is still verbose, confusing, and conclusory.  It does

17   not clearly set forth facts supporting Plaintiff's claims against specific defendants.

18        While Plaintiff states that he is only bringing three claims, it is not at all clear that this is

19   true.  For instance, Plaintiff's first claim is for violation of his Sixth Amendment right to

20   prepare and present a meaningful defense in his criminal cases.  However, in this claim, he also

21   alleges that defendant Robinson does not follow state-mandated regulations for clothing and

22   bedding exchange, and that he was denied showers and outside cell time.  These allegations

23   appear to have no relationship to his allegation that Defendants are preventing him from

24   preparing and presenting a meaningful defense in his criminal case.  Plaintiff also complains

25   about how his civil cases are being affected, and about the processing of legal mail (apparently

26   in relation to both his civil and criminal cases).  It is thus not clear if Plaintiff is including

27   irrelevant allegations in this claim or if Plaintiff is improperly attempting to bring numerous

28   separate claims.

21

Additionally, the vast majority of Plaintiff's allegations are conclusory.  For example, Plaintiff alleges that Defendant Robinson is aware of a culture of changing records, logs, and other data within the jail as may be deemed necessary by deputies, but he takes no action to remedy this blatant misconduct.  However, Plaintiff does not explain specific facts about what Defendant Robinson did or said, or when or where these things allegedly happened.  As another example, Plaintiff alleges that Defendant Putnam tacitly advances intensified retaliatory acts against Plaintiff which include multiple attempts at incitement of physical violence against Plaintiff by group retaliation.  However, Plaintiff provides no allegations regarding how Defendant Putnam tacitly advances retaliatory acts, nor does he provide any allegations as to how Defendant Putnam attempted to incite physical violence against Plaintiff.  Again, Plaintiff does not describe what Defendant Putnam specifically did or said to support this conclusion.

Moreover, Plaintiff also includes many statements about what happened to various prisoners, and not to Plaintiff himself.  However, in the context of *pro se* litigants, "courts have routinely adhered to the general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity."  *Simon v. Hartford Life, Inc.,* 546 F.3d 661, 664 (9th Cir. 2008); *see also Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("A litigant appearing in propria persona has no authority to represent anyone other than himself.").  Here, Plaintiff is proceeding *pro se* on behalf of himself and no others.  Therefore, the facts regarding other prisoners are not relevant and do not support any cognizable claims on behalf of Plaintiff.

Based on the foregoing, the Court finds that Plaintiff's FAC violates Rule 8(a). In its screening order, the Court set forth the legal standards for complaints and explained the need for a short and plain statement of Plaintiff's claims showing that he is entitled to relief.  The Court gave Plaintiff leave to amend his complaint consistent with these standards.  The Court also provided legal standards that could be relevant to Plaintiff's allegations and analyzed each of the claims Plaintiff appeared to be attempting to bring.[1] However, Plaintiff's objections

---

[1] As Plaintiff sues the Board of Supervisors, the Court notes that the Board is not a proper defendant for Plaintiff's claims because it is not considered a "person" within the meaning of § 1983.  Local government units, such as cities and municipalities, are considered "persons" within the meaning of § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 70 (1989); Monell v. Dept. of Social Services of City of New York, 436 U.S. 658,

1   maintain that the FAC is sufficiently pled and indicate that Plaintiff does not wish to file an
2   amended complaint and instead chooses to stand on the FAC.  (ECF No. 29.)

3          3.      Access to Courts

4          Under the First and Fourteenth Amendments to the Constitution, state inmates have a
5   "'fundamental constitutional right of access to the courts.'"  *Lewis v. Casey*, 518 U.S. 343, 346
6   (1996) (quoting *Bounds v. Smith*, 430 U.S. 817 (1977)); *Phillips v. Hust*, 477 F.3d 1070, 1075
7   (9th Cir. 2007), *overruled on other grounds by Hust v. Phillips*, 555 U.S. 1150 (2009).  This
8   right extends to pretrial detainees.  *See, e.g., Camposeco v. Bordeaux*, 2020 WL 5984420, at *6
9   (E.D. Cal. July 31, 2020) ("Prisoners (including pretrial detainees) have a constitutional right of
10  access to the courts under the First Amendment."), *report and recommendation adopted sub*
11  *nom. Camposeco v. Boudreaux*, 2020 WL 5983157 (E.D. Cal. Oct. 8, 2020).

12         To have standing to bring this claim, Plaintiff must demonstrate that he suffered an
13  actual injury.  *Lewis*, 518 U.S. at 351-52 (1996); *Vandelft v. Moses*, 31 F.3d 794, 798 (9th Cir.
14  1994).  This means Plaintiff must allege that he was prejudiced with respect to contemplated or
15  existing litigation, such as the inability to meet a filing deadline or present a nonfrivolous
16  claim.  *Lewis*, 518 U.S. at 348-49.  To succeed, Plaintiff must have been denied the necessary
17  tools to litigate a nonfrivolous criminal appeal, habeas petition, or civil rights action.  *Lewis*,
18  518 U.S. at 353-55 & n.3; *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

19         Plaintiff need not show that he would have been successful on the merits of his claims,
20  but only that they were not frivolous.  *Allen v. Sakai*, 48 F.3d 1082, 1085 & n.12 (9th Cir.
21  1994).  A claim "is frivolous where it lacks an arguable basis either in law or in fact."  *Neitzke*
22  *v. Williams*, 490 U.S. 319, 325 (1989).  The Ninth Circuit has emphasized that "[a] prisoner
23  need not show, ex post, that he would have been successful on the merits had his claim been
24  considered.  To hold otherwise would permit prison officials to substitute their judgment for the

25  _____

26  690 (1978). "However, municipal departments and sub-units … are generally not considered 'persons' within the
    meaning of Section 1983."  Sanders v. Aranas, 2008 WL 268972, at *2 (E.D. Cal. Jan. 29, 2008) (collecting
27  cases); see also Gomez v. Fresno Police Dept., 2016 WL 2939416, at *4 (E.D. Cal. May 20, 2016) ("[M]unicipal
    departments and sub-units … are generally not considered 'persons' within the meaning of Section 1983.");
28  Ledesma v. Kern County, 2016 WL 6666900, at *18 (E.D. Cal. Nov. 10, 2016) ("[S]ub-departments or bureaus of
    municipalities … are not generally considered 'persons' within the meaning of § 1983.").

courts' and to interfere with a prisoner's right to court access on the chance that the prisoner's claim would eventually be deemed frivolous." *Allen*, 48 F.3d at 1091 (footnote omitted).

"Where a prisoner asserts a backward-looking denial of access claim—one … seeking a remedy for a lost opportunity to present a legal claim—he must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007), *vacated on other grounds*, 555 U.S. 1150 (2009).

Plaintiff generally alleges interference with his court cases.  For example, Plaintiff alleges that mail has been held past court deadlines, that all litigation was halted, that his legal property was confiscated, that certain defendants reviewed his legal materials and used that information to "defeat" Plaintiff's litigation (ECF No. 19, p. 19), and that at least one defendant caused "protracted court hearings and court dates" (*id.* at 11-12).  Plaintiff also alleges that his cases have been delayed and damaged.

However, his allegation that his cases have been damaged is conclusory.  There are no allegations describing how he was prejudiced with respect to existing or contemplated litigation.  Plaintiff does not describe any specific case or outcome that happened from an alleged interference.

As to the unspecified delay, while this may be an injury, this is not the type of "actual injury" contemplated by an access to the courts claim.[2]  For an access to courts constitutional violation, Plaintiff must sufficiently allege that he was prejudiced with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a nonfrivolous claim.  *Lewis*, 518 U.S. at 348-49.  However, at most, Plaintiff alleges an unspecified delay to his ongoing cases.  There are no allegations suggesting that Plaintiff lost any claims or remedies.  *Christopher*, 536 U.S. at 416 ("[T]he underlying cause of action and its *lost* remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant.")

---

[2] The Court has not found any controlling authority, or any persuasive authority from this district, suggesting that an unspecified delay, without more, constitutes an "actual injury."

24

(emphasis added).

Accordingly, the Court finds that Plaintiff fails to state an access to courts claim against any defendant.[3]

4.   Mail

Generally, prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  However, a prison may adopt regulations or practices that impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests."  See Turner v. Safley, 482 U.S. 78, 89 (1987).

Confidential correspondence between a prisoner and his criminal attorney is protected by the Sixth Amendment.  See Nordstrom v. Ryan, 762 F.3d 903, 909 (9th Cir. 2014) ("What prison officials don't have the right to do is read a confidential letter from an inmate to his lawyer.").  Additionally, the Ninth Circuit "recognize[s] that prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017).  However, a complaint must "clarify who sent the mail or whether it was properly marked as 'legal mail.'"  Id.  "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail."  Id.

Here, Plaintiff alleges that legal mail was withheld, that it was opened outside his presence, and that there is a lack of sealable manilla envelopes.  Plaintiff also complains about policies regarding the processing of mail and how his mail was processed.

However, Plaintiff's allegations are largely conclusory.  Plaintiff fails to allege who sent legal mail to him, whom he sent legal mail to, the contents of the legal mail he allegedly sent

---

[3] As discussed above, Plaintiff's allegations are largely conclusory, and Plaintiff does not provide any dates regarding when any of the alleged violations occurred.  Thus, it is not clear when the violations allegedly occurred.  However, the Court notes that Plaintiff has been able to litigate this case, including filing two complaints (ECF Nos. 1 & 19), responding to the screening order (ECF No. 13), objecting to findings and recommendations (ECF No. 17), and filing multiple motions for injunctive relief (ECF Nos. 3, 12, & 22).  Plaintiff also filed another case in the Eastern District that he appears to be actively litigating.  See Harper v. Well Path, E.D. CA, 1:21-cv-00558.  Finally, Plaintiff alleges that he prevailed in at least two of the cases he filed in Kings County Superior Court.  (ECF No. 19, p. 5).

25

and received, or whether it was properly marked as legal mail.  Moreover, there are no allegations suggesting that Plaintiff has an attorney, let alone that any official at Kings County Jail ever read mail to or from an attorney (Plaintiff alleges that he is defending two criminal cases, but he alleges he is proceeding *pro se*).  Finally, Plaintiff does not sufficiently allege how a lack of sealable envelopes violated his constitutional rights.

In addition to the above, Plaintiff alleges that at least some mail he attempted to send was not sent.  While the failure to send mail could violate Plaintiff's constitutional rights, his allegations are conclusory.  He provides no details regarding the mail, such as when Plaintiff tried to send the mail, what mail prison officials failed to send, or how many times prison officials failed to send his mail.

Accordingly, the Court finds that Plaintiff fails to state a claim based upon how his mail was processed.

5.     Punishment in Violation of the Fourteenth Amendment

"Pretrial detainees have a substantive due process right against restrictions that amount to punishment."  *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002).  "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

"For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee."  *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004).  "Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate a pretrial detainee's right to be free from punishment."  *Hatter v. Dyer*, 154 F. Supp. 3d 940, 945 (C.D. Cal. 2015) (citing *Block v. Rutherford*, 468 U.S. 576, 584 (1984)).

In the first step of this inquiry, "the harm or disability ... must either significantly exceed, or be independent of, the inherent discomforts of confinement."  *Demery*, 378 F.3d at 1030.  To determine punitive intent, courts "first examine whether the restriction is based upon an express intent to inflict punishment."  *Valdez*, 302 F.3d at 1045.  Courts "next consider

1  whether punitive intent can be inferred from the nature of the restriction.  This determination []

2  will generally turn upon 'whether an alternative purpose to which [the restriction] may

3  rationally be connected is assignable for it, and whether [the restriction] appears excessive in

4  relation to the alternative purpose assigned [to it].'"  *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520,

5  538 (1979)) (brackets in original).

6      Plaintiff's allegations regarding his pretrial punishment are conclusory, and Plaintiff

7  fails to sufficiently allege that he was subjected to punishment without due process of law.

8  Plaintiff does allege that defendant Robinson did not hold a *Wilson* hearing or any other

9  hearing before stripping Plaintiff of all *pro se* rights and privileges.  However, Plaintiff

10  provides no allegations regarding what rules he allegedly violated, when he was found to have

11  violated prison rules, how long after this date the changes to his *pro se* rights occurred, or that

12  he did not receive a hearing before being punished (he only alleges that defendant Robinson did

13  not hold a hearing).  He also does not allege facts which would indicate that these actions were

14  done in punishment, rather than for a legitimate interest (such as to prevent improper use of

15  mail materials).

16      Accordingly, the Court finds that Plaintiff fails to state a claim that he was subjected to

17  punishment in violation of the Fourteenth Amendment.

18      6.    Retaliation

19      There are five basic elements to a First Amendment retaliation claim: "(1) An assertion

20  that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

21  protected conduct, and that such action (4) chilled the inmate's exercise of his First

22  Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

23  goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

24      "'[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he

25  suffered some other harm,' *Brodheim*, 584 F.3d at 1269, that is 'more than minimal,' *Robinson*,

26  408 F.3d at 568 n.11.  That the retaliatory conduct did not chill the plaintiff from suing the

27  alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage.  *Id.* at

28  569."  *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration in original).

27

1    While prisoners have no freestanding right to a prison grievance process, se*e Ramirez v.*

2    *Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the

3    courts hinges on his ability to access the prison grievance system," *Bradley v. Hall*, 64 F.3d

4    1276, 1279 (9th Cir.1995), *overruled on other grounds by Shaw v. Murphy,* 532 U.S. 223, 230

5    n.2 (2001).  Because filing administrative grievances and initiating civil litigation are protected

6    activities, it is impermissible for prison officials to retaliate against prisoners for engaging in

7    these activities.  *Rhodes*, 408 F.3d at 567.

8    Plaintiff alleges numerous adverse actions, including that certain defendants tried to

9    incite violence against Plaintiff and that at least one defendant helped orchestrate the theft of

10   his legal papers and legal work.  However, Plaintiff's allegations are conclusory, and there are

11   no specific allegations that Plaintiff was ever threatened or attacked.  Moreover, while Plaintiff

12   alleges that the adverse actions were done in retaliation, this is also conclusory.  He does not

13   describe anything someone said or did specifically that would indicate that they took an adverse

14   action based on Plaintiff filing grievances or lawsuits.  Plaintiff has not sufficiently alleged that

15   any defendant took an adverse action against Plaintiff because he engaged in protected conduct.

16   Accordingly, the Court finds that Plaintiff fails to state a First Amendment retaliation claim.

17        7.    Processing of Grievances

18   "[A prison] grievance procedure is a procedural right only, it does not confer any

19   substantive right upon the inmates."  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)

20   (alteration in original) (quoting *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); *see*

21   *also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of

22   appeals because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d

23   641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on

24   prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a

25   protected liberty interest requiring the procedural protections envisioned by the Fourteenth

26   Amendment."  *Azeez*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo.

27   1986).

28   ///

28

Plaintiff complains about grievances not being processed appropriately.  However, as Plaintiff does not have a liberty interest in the processing of his grievances, the Court finds that Plaintiff fails to state a claim based on his allegations that his grievances were not appropriately processed.  To the extent prison officials failed to process Plaintiff's grievances, that may allow Plaintiff to proceed in court without fully exhausting administrative remedies.  But poor processing of appeals is not an independent constitutional violation.[4]

## IV.      CONCLUSION AND RECOMMENDATIONS

The Court has screened Plaintiff's FAC and finds that it fails to state any cognizable claims. The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state a claim, and gave Plaintiff leave to file a Second Amended Complaint, but Plaintiff chose to stand on the FAC

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1.   This action be dismissed for failure to state a claim; and

2.   The Clerk of Court be directed to close the case.

///
///
///
///
///
///
///
///
///

---

[4] Plaintiff does not bring a cause of action based on conditions of confinement.  Additionally, his allegations about conditions are conclusory.  Finally, at least some of Plaintiff's allegations regarding the conditions of confinement appear to have no factual relationship to the claims he is attempting to bring in this case.  For example, Plaintiff complains that state-mandated regulations for clothing and bedding exchange were not followed, that Plaintiff was not provided with cleaning supplies as required by state regulations, and that Plaintiff was not provided with hot water as required by state regulations.

Given the above, the Court is not addressing any potential conditions of confinement claims raised by Plaintiff's First Amended Complaint.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    __July 12, 2022__          /s/ Erica P. Grosjean

_____
UNITED STATES MAGISTRATE JUDGE